527 So.2d 747 (1988)
Ex parte James K. BETTERTON.
(Re State of Alabama v. James K. Betterton).
86-502.
Supreme Court of Alabama.
March 18, 1988.
Rehearing Denied June 17, 1988.
Walden M. Buttram of Finlayson & Buttram, Gadsden, for petitioner.
Don Siegelman, Atty. Gen. and Cecil G. Brendle, Jr., Asst. Atty. Gen., for respondent.
TORBERT, Chief Justice.
Petitioner James K. Betterton was indicted for possession of cocaine. The trial court granted his pre-trial motion to suppress the evidence as having been seized without probable cause. Then the trial *748 court dismissed the case when the prosecution admitted that it had no case due to the suppression of the evidence. The Court of Criminal Appeals, 527 So.2d 743 (Ala.Cr. App.1986), reversed the decision of the trial court and held that the police officers' conduct in approaching the parked car in which the petitioner was sitting did not constitute either a stop or a seizure.
The testimony at the suppression hearing shows that the defendant and two other males were in the front seat of an automobile with an empty car parked behind them; they were parked in Paseur Park, known as "the Brow," overlooking the city of Gadsden at 1:40 a.m. Two Gadsden police officers on patrol spotted the two cars, and according to one officer, "We just got out to check and see ... if we could help them with anything or if they were having trouble or what they were doing." This same officer also testified that Paseur Park was "usually for parkers or if you wanted to take your girlfriend up there and park or go up there and drink a beer or something, you know, in the privacy of your car." The testimony did not indicate that this was a high crime area or that there was anything unusual about cars being parked there at that time of night.
The officers parked either behind or to the side of the cars[1] with their bright lights on; one officer walked up to the occupied car and knocked on the driver's window. When the window was opened, the officer smelled marijuana smoke. The occupants were removed from the car and searched, and a small glass container allegedly holding cocaine was found on the defendant.
Before asking whether the requisite cause necessary to justify a stop was present in this case, it must first be determined whether a "stop" or "seizure" occurred prior to the point at which the police officers directed the petitioner and his companions to get out of the car in which they were sitting. Betterton argues that when the police officers interrupted their patrol, and with bright headlights on, pulled in behind the vehicle in which he was a passenger and knocked on the driver's window, there was sufficient show of authority or implied restraint to constitute a stop or seizure. The petitioner concludes that because there was no evidence or even suspicion of criminal activity at the time of this alleged stop, the "stop" was illegal and therefore the trial court correctly suppressed the fruits of the resulting search and seizure. The State submits that no probable cause or articulable suspicion of criminal activity was necessary in order for the officers to see if the three individuals needed assistance and that the initial action of the officers did not have Fourth Amendment implications.
In the law of search and seizure, the term "stop" refers to a type of temporary detention for investigation. In the landmark case of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court rejected the suggestion that referring to a temporary detention as a "stop" takes such police action out of the purview of the Fourth Amendment. The Court wrote: "[I]t is quite plain that the Fourth Amendment governs `seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime'arrests' in traditional terminology." Terry, 392 U.S. at 16, 88 S.Ct. at 1877. "In our view the sounder course is to recognize that the Fourth Amendment governs all intrusions by agents of the public upon personal security...." Terry, 392 U.S. at 17 n. 15, 88 S.Ct. at 1878 n. 15.
It is clear that what is known as a "Terry stop"a temporary detention of the person, is a "seizure" of that person under the protections of the Fourth Amendment. But what makes a police encounter a "seizure" for purposes of the Fourth Amendment? The Court in Terry stated that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person." The Court later refined the inquiry as follows:
"We conclude that a person has been `seized' within the meaning of the Fourth *749 Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. * * * In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person."
United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).
As stated, the Fourth Amendment applies to seizures of the person, including brief investigatory stops. Although a temporary seizure of the person does not require the probable cause necessary to justify a seizure amounting to an arrest,[2] "[A]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621 (1981); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The quantum of cause necessary to authorize police to stop a person has been explained in these terms: "[T]he totality of the circumstancesthe whole picturemust be taken into account. Based upon the whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, 449 U.S. at 417-18, 101 S.Ct. at 694-95; Worthy v. State, 473 So.2d 634 (Ala.Cr. App.1985).
As noted above, the issue before this Court is whether the police action in question amounted in law to a stop or seizure of the petitioner. If it is determined that at the time Officer Higdon smelled the burning marijuana no seizure had yet occurred, then the contraband found on the petitioner would be admissible evidence, as the Court of Criminal Appeals held. While it is clear that the stopping of a vehicle and the detention of its occupants constitutes a seizure within the meaning of the Fourth Amendment,[3]Colorado v. Bannister, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980), in the present case the car was already stopped and parked in a public park. We must therefore ask whether the officer's actions amounted to such an implied restraint or show of authority that "a reasonable person would have believed that he was not free to leave." Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877.
In his treatise on search and seizure, LaFave discusses the issue as follows:
"[W]hat does it mean, then, to say that a reasonable person `would have believed that he was not free to leave'? [United States v.] Mendenhall [446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) ], [Florida v.] Royer [460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ], and [Immigration & Naturalization Service v.] Delgado [466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)] make it perfectly clear that it takes something more than mere questioning by a police officer. Thus, if an officer merely walks up to a person standing or sitting in a public *750 place (or, indeed, who is seated in a vehicle located in a public place) and puts a question to him, this alone does not constitute a seizure....
[T]he mere approach and questioning of [persons seated within parked vehicles] does not constitute a seizure. The result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation. The officer may tap on the window and perhaps even open the door if the occupant is asleep. A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order that he do so. Likewise, the encounter becomes a seizure if the officer orders the suspect out of the car. So too, other police action which one would not expect if the encounter was between two private citizens boxing the car in, approaching it on all sides by many officers, or use of flashing lights as a show of authority-will likely convert the event into a Fourth Amendment seizure."
W. LaFave, 3 Search & Seizure § 9.2(h) (2d ed. 1987) (footnotes omitted). See cases cited at n. 230, p. 409 and nn. 263-265, p. 416.
In Terry v. Ohio, supra, the Supreme Court noted that not every encounter between police officers and citizens constitutes a seizure within the protection of the Fourth Amendment. Terry, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 383 (1968). In United States v. Berry, 670 F.2d 583 (5th Cir.1982), the Court of Appeals, concluded that Supreme Court holdings since Terry have sculpted out three tiers of police-citizen encounters. The court stated that first tier encounters communications between police and citizens involving no coercion or detentionare outside the compass of the Fourth Amendment. See, also, United States v. Willis, 759 F.2d 1486, 1495 (11th Cir.1985) (police citizen encounters of a restricted investigative scope conducted in a noncoercive manner do not trigger Fourth Amendment protections).
In the present case, the officers merely approached a car parked in a public place. We agree with the Court of Criminal Appeals that such action did not amount to such a show of authority or implied restraint as to amount to a seizure of the petitioner. United States v. Pajari, 715 F.2d 1378 (8th Cir.1983). See Lafave, 3 Search & Seizure § 9.2(h) (2d ed. 1987). It follows that the subsequent seizure of the cocaine from the petitioner was proper. See the opinion of the Court of Criminal Appeals, 527 So.2d at 743.
AFFIRMED.
MADDOX, SHORES, HOUSTON and STEAGALL, JJ., concur.
ALMON and ADAMS, JJ., concur in the result.
JONES and BEATTY, JJ., dissent.
BEATTY, Justice (dissenting).
I disagree with the majority's conclusion that the action of the police officers in this case "did not amount to such a show of authority or implied restraint as to amount to a seizure of the petitioner."
In United States v. Beck, 602 F.2d 726 (5th Cir.1979), officers familiar with almost everyone in the high-crime neighborhood they were patrolling spotted two unfamiliar men sitting in a car with the motor running near a convenience store. The officers then pulled alongside the car. The Fifth Circuit Court of Appeals held that that was a "stop":
"When Spears and Gober interrupted their patrol by pulling alongside the parked Chevrolet, they clearly took the sort of action contemplated by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968), in its definition of a `stop' [seizure]: `whenever a police officer accosts an individual and restrains his freedom to walk away....' Id. at 16, 88 S.Ct. at 1877."
602 F.2d at 728.
"`[I]n the Fourth Amendment sense, the term "stop" does not mean a physical stop but rather a restraint of movement. Thus, *751 the fact that the car was already stopped at the time the officers approached is of no moment in the constitutional inquiry.'" Beck, 602 F.2d at 728 n. 1 (quoting United States v. Robinson, 535 F.2d 881, 882 n. 2 (5th Cir.1976).
In the present case, the officers not only approached the parked vehicle and knocked on the window but also boxed in the car with their police cruiser, its bright lights on, by parking either behind or alongside the two cars. Moreover, the petitioner and his companions were not on a public street or the parking lot of a public place; they were at a city park. Although a city park, being a public facility, is certainly open to the public, a person's expectation of privacy is much higher in a city park than at other public places. This expectation of privacy was even recognized by one of the officers who arrested the petitioner. Under these circumstances, I believe that a reasonable person would have believed that he was being restrained. Clearly, the petitioner and the two other men were not free "to walk away." They could not simply ignore the officers and try to drive away. While I am mindful that not every encounter between police officers and citizens constitutes a seizure within the protection of the Fourth Amendment, Terry v. Ohio, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968), I would hold that the action taken by the officers in this case was the sort of action contemplated by the United States Supreme Court in Terry v. Ohio, i.e., that such action constituted a seizure of the petitioner and his companions.
Because this was a "stop," it was improper unless the officers had a particularized and objective basis for suspecting the petitioner of criminal activity. The testimony did not indicate that this was a high-crime area; the officer testified that there was nothing unusual about cars being parked there late at night; the officers did not see any signs of criminal activity or any indication that these three men were having automobile trouble. One officer even testified that the reason they stopped and investigated the parked cars was to see "if we could help them with anything or if they were having trouble or what they were doing." (Emphasis added.) To meet the objective test necessary to justify a particular intrusion such as this, good faith on the part of the arresting officer is not enough. Terry, 392 U.S. at 22, 88 S.Ct. at 1880. "This demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." Terry, 392 U.S. at 21 n. 18, 88 S.Ct. at 1880 n. 18. As the Fifth Circuit said in Beck:
"Spears's mere unfounded feeling that something might be afoot did not warrant his stop of the Chevrolet. Had he observed the vehicle for some time and seen Beck or his passenger take some suspicious actions, a stop might have been permissible, but under the facts here we hold the stop was illegal."
602 F.2d at 729.
In this case, the officers did not have a particularized and objective basis for suspecting petitioner of criminal activity. The "knowledge" of the Court of Criminal Appeals from other cases that "secluded outdoor areas ... have become the location for the commission of violent crime" cannot act as an after-the-fact rationalization for the action of these officers. The reasonableness of a seizure is determined by the circumstances at the inception of an officer's action. Terry, 392 U.S. at 19-20, 88 S.Ct. at 1878-79.
For the above reasons, the trial court was correct in suppressing the evidence seized as a result of this improper stop. Accordingly, I must dissent.
JONES, J., concurs.
NOTES
[1] The testimony of the two officers conflicts somewhat on this point. One said that they parked behind the two cars; the other said that they parked alongside the two cars.
[2] What differentiates a "stop" seizure from an "arrest" seizure is the scope and length of time of the particular detention. In Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Supreme Court stated that: (1) "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop"; and (2) "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Royer, 460 U.S. at 500, 103 S.Ct. at 1325-26. See also United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) (if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop). See generally 3 W. LaFave, Search & Seizure § 9.2(d) and (f) (2d ed. 1987).
[3] This is so even though the purpose of the stop is limited and the resulting detention is quite brief. Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).