**Marcellus S. JACOBS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 07–CM–664.

District of Columbia Court of Appeals.

Argued June 12, 2008.

Decided Sept. 17, 2009.

Gaillard T. Hunt, Silver Spring, MD, for appellant.

Steven E. Swaney, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III and Florence Pan, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN, KRAMER and FISHER, Associate Judges.

KRAMER, Associate Judge:

Appellant Marcellus Jacobs pleaded guilty to one count of possession with intent to distribute marijuana conditioned upon preserving his right to appeal the trial court's denial of his motion to suppress the tangible evidence recovered from him in what he contends was an illegal seizure. He now appeals the trial court's denial of that motion. We affirm.

## I.

Officer Andre Parker testified at the suppression hearing that at approximately 9:47 p.m. on the night in question he and his partner, Officer Aisha McKreery, received a radio assignment to respond to an assault. The radio run was for a "female fighting with someone inside of a gold vehicle" located at 3319 Gainesville Street in Southeast Washington. Upon arriving at the specified address two minutes later, they "observed a gold vehicle parked with a gentleman inside of it." The man was alone and did not appear to have been involved in a fight.

The officers ran checks on the car's license plate, then activated their emergency equipment (*i.e.* flashing lights) and approached the vehicle, one officer on each side. Officer Parker said he approached the driver's side window and the driver rolled the window down at his request. Officer Parker then explained to appellant why they had pulled behind him and that

they were investigating the assault of a female inside a gold-colored vehicle. He asked appellant whether everything was all right and whether there was a female in the car. Appellant informed Officer Parker that everything was fine, and that there was no female in his car. He appeared nervous to Officer Parker, however, and his hands were noticeably shaking.

At that point, Officer Parker "smelled a strong odor of marijuana coming from the vehicle." It was a "very strong smell of unburned marijuana" based on his experience, but he saw no contraband in plain view. Officer Parker then asked appellant to turn off his engine, which he did. The window on the passenger's side was also down by then, according to Officer Parker, and he exchanged a knowing glance with Officer McKreery, who was standing on the passenger's side, confirming that they were both smelling unburned marijuana. Officer Parker returned to asking appellant whether everything was all right and whether he had seen any suspicious activity, but Officer McKreery, having noticed a brown paper bag between appellant's legs, asked him what was in the bag. Appellant replied that it was his lunch. Officer McKreery asked whether they could search the car, and appellant consented. Once appellant left the car, Officer McKreery could view a package of marijuana in the area where appellant's right thigh had been, and Officer Parker could see several plastic bags of marijuana. Officer Parker then searched him, patted him down for weapons, and placed him in handcuffs while Officer McKreery searched his car.

Officer McKreery generally confirmed Officer Parker's account of the evening's events and recalled smelling unburned marijuana. Contrary to Officer Parker's testimony, however, Officer McKreery testified that the front two windows were rolled down when they arrived, and that she did not hear Officer Parker tell appellant to roll his window down.

Although the trial court noted that there was conflicting testimony as to whether the car's windows had been rolled down when the officers arrived, the court opined that it made no difference whether the windows were up or down and explicitly declined to determine whether asking appellant to roll down his window constituted a seizure because, the court found, appellant consented to the search and consented to getting out of his car. Likewise, the trial court explicitly declined to make a finding on whether the marijuana smells constituted additional grounds for asking appellant to get out of his car on the ground that he had consented to the search of his car before he was asked to get out of the car.

## II.

The Supreme Court's decision in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), requires a trial court, when considering the legality of an investigatory stop, to determine whether the police had "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an " 'intrusion upon the constitutionally protected interests of the private citizen.' " *Id.* at 21, 88 S.Ct. 1868 (quoting *Camara v. Mun. Court,* 387 U.S. 523, 534–35, 536–37, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). In evaluating the legality of an investigatory stop, the trial court "must look to the 'totality of the circumstances.' Even if each specific act by a suspect could be perceived in isolation as an innocent act, the observing police officer may see a combination of facts that make out an articulable suspicion." *Peay v. United States,* 597 A.2d 1318, 1320 (D.C.1991) (citing *Alabama v. White,* 496 U.S. 325, 110

S.Ct. 2412, 110 L.Ed.2d 301 (1990)). "The 'test is necessarily imprecise, however, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation.'" *Guadalupe v. United States*, 585 A.2d 1348, 1353 (D.C.1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)). Although we review the issue *de novo* because whether reasonable suspicion existed is a legal question, "the facts and all reasonable inferences therefrom must be viewed in favor of sustaining the trial court ruling." *Peay, supra*, 597 A.2d at 1320 (citations omitted).

■ Accordingly, the question is at what point a stop would have been justified, and whether the stop occurred before that point, making it illegal. An anonymous tip alone is insufficient to establish the minimal level of objective justification for a stop. *Gomez v. United States*, 597 A.2d 884 (D.C.1991). Thus, the parties have focused their arguments on whether the activation of the officers' emergency equipment amounted to a stop, and whether, if not, that in combination with asking appellant to roll down his windows amounted to a stop. Certainly, if there was no seizure before the police smelled the marijuana and got appellant's consent to search his car (*i.e.,* if activating the emergency equipment did not amount to a seizure and the windows were down when

the officers approached the car), then the trial court was correct to admit the evidence because the officers' smelling the marijuana would have allowed them to stop appellant and search his vehicle.[1] *See, e.g., Minnick v. United States*, 607 A.2d 519, 525 (D.C.1992) ("This court has repeatedly found probable cause to search an automobile based, at least in part, on an officer's recognition of the smell of drugs."); *United States v. Bolden*, 429 A.2d 185 (D.C.1981) (per curiam).

■ First, we consider whether turning on the emergency lights alone amounted to a stop. It is important to recognize that the police did not use their lights to pull over appellant's car. Instead, he had already parked the car of his own volition, and the police needed no Fourth Amendment justification to approach the parked car and ask him some questions. There may have been non-coercive and safety-related reasons for turning on the lights that night, not the least of which may have been to signal passing motorists to use caution to avoid striking the officers and appellant at the side of the road. There was no evidence, however, that appellant was attempting to drive away or that the lights deterred him from doing so. Moreover, only a brief time passed before the officers smelled marijuana.

In remarkably similar circumstances courts in other jurisdictions have held that no seizure existed.[2] The Seventh Circuit

---

1. The running of the engine at the time the officers arrived is thus irrelevant to our analysis, because Officer Parker, whose testimony was generally credited by the trial court, testified that he asked appellant to turn off the engine after smelling the marijuana. Similarly, we need not discuss whether appellant gave his consent to the search of his car, because by the time he did so, the officers, having smelled the marijuana, already had probable cause to search the car.

2. The government contends that our decision in this case is effectively controlled by *(Dexter) Davis v. United States*, 781 A.2d 729 (D.C. 2001). There, an officer received a radio run for "an assault in progress at 5th and H Streets in Northeast Washington, with a description for a lookout for 'a black male wearing a black jacket, blue jeans and a green shirt.'" *Id.* at 733. Less than two minutes later the officers "drove up 'with lights and sirens'" on, found the defendant walking a short walk away, and, seeing that he matched

recently held that there was no seizure where police "illuminat[ed] their flashing lights to alert the car's occupants that they were going to approach the [voluntarily parked] vehicle" in response to a radio run at approximately 10:40 p.m. about a car that had been parked and running on a public street for four hours because "[w]ithout identifying themselves appropriately to the car's occupants, the officers would have put themselves at risk in approaching a parked car late at night." *United States v. Clements*, 522 F.3d 790, 792, 794–95 (7th Cir.2008). Similarly, the Supreme Court of Alabama held in *Ex parte Betterton*, 527 So.2d 747, 747, 750 (Ala.1988), that there was no seizure where "officers parked either behind or to the side of" two cars, one containing the defendant and others and another empty, "with their bright lights on" and where "one officer walked up to the occupied car and knocked on the driver's window." Therefore, when the occupants rolled down the window and one officer smelled marijuana, the evidence thereafter recovered was admissible. *Id.* at 750; *see also Medley v. State*, 630 So.2d 163, 165 (Ala.Crim.App. 1993) (no seizure where officer observed motorist drive slowly, pull over, and park, and walked up to driver's car, tapping window and asking driver to roll it down); *Merideth v. State*, 603 S.W.2d 872, 873 (Tex.Crim.App.1980) (where police had received regular burglary calls from area, officer did not stop occupants of parked truck by driving up to parking lot, stepping up to window, and tapping on window, which, after being rolled down, revealed smell of marijuana); *cf. City of Fargo v. Sivertson*, 571 N.W.2d 137, 140 (N.D.1997) ("[A]n officer's approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner,

does not order the person to do something, and does not demand a response.").

We likewise decline to find a seizure in this case. *Cf., e.g., Purce v. United States*, 482 A.2d 772, 777 (D.C.1984) (holding that only a consensual encounter, not an investigative stop, had occurred where an officer doing a routine check of a parking lot in which there had recently been some larcenies saw the appellant sleeping in his car, walked over, shined his flashlight, tapped on the window, asked him to roll it down, and then "asked him for some identification and an explanation of what he was doing there"); *Davis, supra* note 2, 781 A.2d at 740 (noting that *Lawrence v. United States*, 509 A.2d 614 (D.C.1986), which distinguished between the effect that activation of an officer's emergency equipment might have upon motorists, who would clearly know they were being stopped, and pedestrians, who would likely not, without more, know the officer was trying to stop them, suggests that "something beyond flashing lights and blaring sirens is necessary in order for the actions of the officers to constitute the seizure of a pedestrian").

■ Having decided that the activation of the police emergency equipment in this case was not a stop, we now assume that the police asked appellant to roll down his window and inquire whether doing so in combination with turning on the lights amounted to a stop. We hold that it does not. As a general matter, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to

---

the description given, exited their vehicle and asked him to come over to the car. *Id.* That case is not controlling, however, because

Davis was a pedestrian; he was not, as was appellant here, sitting in the driver's seat of a parked car.

listen ...," *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), and, in this case, asking the person sitting in the driver's seat to roll down his window was the only way the police could speak to that person. Therefore, we affirm. *See id; Purce, supra,* 482 A.2d at 777 (no seizure where officer approached the sleeping appellant's car and asked him to roll the window down); *United States v. Barry,* 394 F.3d 1070, 1075 (8th Cir.2005) (no seizure where officer approached a "vehicle parked in an alley behind closed stores" and knocked on the window); *Medley, supra,* 630 So.2d at 165 (no seizure where officer observed motorist drive slowly, pull over, and park, and then walked up to driver's car, tapped the window, and asked the driver to roll it down).[3]

For the foregoing reasons, the decision of the trial court is

*Affirmed.*

3. Appellant's argument that he was seized when Officer Parker asked him to roll down the window because Officer Parker testified that, in his view, appellant was not free to leave at that time, fails because the officer's subjective view is "irrelevant except insofar as [it] may have been conveyed to" appellant. *United States v. Mendenhall,* 446 U.S. 544, 555 n. 6, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *accord Morris v. United States,* 728 A.2d 1210, 1223 n. 1 (D.C.1999) (Terry, J., concurring in part and dissenting in part) ("Neither the expressed intent of the officer nor the subjective belief of the person detained is controlling on whether a seizure has occurred.").