# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-3651

———————————————

United States of America

*Plaintiff - Appellee*

v.

Cartez Lamar Cook

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota - St. Paul

——————————

Submitted: October 21, 2016
Filed: November 22, 2016

——————————

Before MURPHY, GRUENDER, and SHEPHERD, Circuit Judges.

——————————

MURPHY, Circuit Judge.

Cartez Lamar Cook was convicted by a jury of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Cook to 120 months imprisonment. Cook appeals, and we affirm.

———————————————

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

I.

In the early morning hours of November 25, 2013, police officers were on routine patrol duty when they spotted an idling car in a high crime area of south Minneapolis. The officers could not immediately determine whether the vehicle was occupied. Worried that an idling vehicle could be taken by an opportunistic thief, the officers decided to check on it by circling around the block. As the officers approached the vehicle a second time, they could tell that it was occupied by two people.

The officers decided to make contact with the occupants of the idling car. They parked behind it and then activated the "wig wag" setting for the patrol car's emergency lights, which produces a distinctive pattern. As they approached the idling car, appellant Cook rolled down the window next to the driver seat. The officers were able to smell marijuana and decided to take Cook into custody, so he was removed from the vehicle and handcuffed. While the officers attended to another passenger, Cook fled. He was apprehended several blocks away and arrested.

When officers looked in the vehicle Cook had been in at their first contact, they saw marijuana and crack cocaine in the back seat. They towed and impounded the car that night. Subsequently the officers obtained a warrant, searched the vehicle, and uncovered a firearm hidden in the vehicle's center console. Analysis revealed that DNA on that gun was consistent with Cook's DNA, but not that of 99.6% of the general population including the other passenger. Ballistics testing also connected the gun to the death of Derek Holt, a man killed three days before Cook's encounter with the police. At the time of Cook's arrest, he had already been identified by police as a person of interest in Holt's death.

Cook was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Cook was convicted following a jury trial and sentenced by the district court to 120 months imprisonment. Cook appeals.

## II.

Cook argues that the district court[2] erred by denying his pretrial motion to suppress the firearm as the fruit of an illegal seizure. When reviewing the denial of a suppression motion, a district court's findings of fact are examined for clear error and its conclusions of law are reviewed de novo. United States v. Castellanos, 608 F.3d 1010, 1015 (8th Cir. 2010). Since there is no dispute about the relevant facts, we give de novo consideration to Cook's arguments regarding the constitutionality of the officers' actions.

It is well settled that not all interactions between law enforcement officers and citizens amount to seizures under the Fourth Amendment. See United States v. Barry, 394 F.3d 1070, 1074 (8th Cir. 2005). Even without a basis for suspecting a person of committing a crime, officers may "generally ask questions of that individual" and "ask to examine the individual's identification," so long as "the police do not convey a message that compliance with their requests is required." Florida v. Bostick, 501 U.S. 429, 434–35 (1991). For an officer's behavior to rise to the level of a Fourth Amendment seizure, the officer must use "physical force or [a] show of authority" to restrain a citizen's liberty. See Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). The crucial question is whether an officer's actions would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his

---

[2]The Honorable Jeffrey J. Keyes, United States Magistrate Judge for the District of Minnesota, prepared a report and recommendation on Cook's motion to suppress which was subsequently adopted by Judge Montgomery.

business." Bostick, 501 U.S. at 437 (quoting Michigan v. Chesternut, 486 U.S. 567, 569 (1988)).

In United States v. Barry, we held that a police officer approaching a parked car does not necessarily effect a seizure for Fourth Amendment purposes. 394 F.3d at 1075. In Barry, an officer on patrol late at night noticed a car parked in an alley behind a shopping mall. Id. at 1072. The officer decided to investigate and parked his vehicle in front of the car. Id. The officer then approached the vehicle while shining his flashlight on his uniform and keeping a hand on his holstered gun. Id. The officer knocked on the passenger side window twice without receiving a response, but on the third knock a person inside the car rolled the window down. Id. The officer smelled marijuana inside the car, which he determined was adequate grounds to detain the car's occupants. Id.

We concluded in Barry that the occupants of the vehicle had not been seized until they were asked to exit their vehicle. See id. at 1075. More specifically, we determined that the officer's actions in approaching the parked car, shining a light on his uniform, keeping a hand on his holstered gun, and knocking on the passenger side window "did not amount to a show of authority such that a reasonable person would believe he was not at liberty to ignore [the officer's] presence and go about his business." Id.

The facts in the present case are not meaningfully different from the facts in Barry, and for substantially the same reasons we conclude there was no Fourth Amendment seizure here until the officers removed Cook from the idling car. This seizure permissibly came after the officers had detected the odor of marijuana coming from Cook's voluntarily opened window. As in Barry, our conclusion that there was no seizure before that point is informed by the fact that (1) the car Cook was in was parked when the officers decided to investigate, (2) the interaction between Cook and

the officers took place late at night in a high crime area, and (3) there is no indication the officers ordered Cook to roll down his window or engage with them in any way.

We also note that the wig wag lights activated by the officers are different from the full light bar which is used to notify motorists in moving vehicles that they are required to stop. See United States v. Dockter, 58 F.3d 1284, 1287 (8th Cir. 1995) (no seizure where police officer pulled behind a parked car and "activated his amber warning lights"); cf. Barry, 394 F.3d at 1075 (suggesting that activation of full "emergency lights" could be a show of authority sufficient to be a seizure under the Fourth Amendment). Here, officers activated the wig wag lights in order to identify themselves as police for the safety of all parties involved. A reasonable person seeing the wig wag lights under these circumstances would have thought that he was still "at liberty to ignore the police presence and go about his business." Bostick, 501 U.S. at 437 (citation omitted).

Since Cook was not unlawfully seized, the district court did not err in denying Cook's motion to suppress.

## III.

Cook also argues that the district court erred by admitting circumstantial evidence that connected him to the shooting death of Derek Holt. A district court's evidentiary rulings are reviewed for abuse of discretion. United States v. Battle, 774 F.3d 504, 511 (8th Cir. 2014).

The district court permitted the government to introduce circumstantial evidence that tied Cook to the death of Derek Holt three days before Cook's arrest. The government's evidence included: (1) a witness who identified the gun Cook was charged with possessing as belonging to Holt; (2) cell phone records that indicated Cook had traveled to the area in which Holt lived and called him shortly before his

death; (3) evidence that Holt's pants pocket had been turned out and $80 he had possessed the night before was missing; and (4) evidence that DNA consistent with Cook's was found in Holt's pants pocket. In sum, the government's circumstantial evidence was intended to paint a picture of Holt's death in which Cook met up with Holt, shot him with his own gun, rifled through his pockets, and then fled. The government reasoned that its ability to present this theory of Holt's death was essential to establish how Cook had come to possess the gun found hidden in the vehicle in which he was riding prior to his arrest.

Cook argues that evidence of his involvement in Holt's death should have been excluded by the district court. We disagree. Evidence of other crimes that "tends logically to prove any element of the crime charged" is "admissible as an integral part of the immediate context of the crime charged" and is therefore "not governed by Rule 404(b)." Battle, 774 F.3d at 511 (quoting United States v. Bass, 794 F.2d 1305, 1312 (8th Cir. 1986)). Cook was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). An essential element of that crime is knowing possession of a firearm. See Battle, 774 F.3d at 511. Evidence that tended to show that Cook had used the gun to shoot Holt just three days earlier would therefore be admissible and "highly probative of the defendant's possession of that weapon." Id.

Cook argues that his case is distinguishable from other cases in which we have found evidence of prior gun possession admissible, see, e.g., Battle, 774 F.3d at 511, because there was no direct evidence he shot Holt with the gun he was charged with possessing. We do not find this distinction persuasive. Circumstantial evidence is "intrinsically as probative as direct evidence." United States v. Tschacher, 687 F.3d 923, 934 (8th Cir. 2012) (quoting United States v. Brown, 634 F.3d 435, 439 (8th Cir. 2011)). Evidence that Cook shot Holt with his own gun is therefore not inadmissible solely because that evidence did not take the form of testimony from an eyewitness who saw Cook shoot Holt. Moreover, there is a strong temporal and logical

-6-

connection between the evidence the government introduced of Cook's possible involvement in Holt's death and its argument that Cook knowingly possessed the gun found hidden in a car he occupied just three days later. Finally, both the government and the court repeatedly told the jury that Cook was not on trial for Holt's death, which mitigated any risk of unfair prejudice from admitting the evidence. See Battle, 774 F.3d at 512. The district court therefore did not abuse its discretion by admitting the evidence Cook challenges.

IV.

Accordingly, we affirm the judgment of the district court.

_____