OPINION
{¶ 1} Defendant-appellant, Joseph P. Phipps, appeals the denial of his Motion to Suppress by the Portage County Municipal Court, Kent Division. For the following reasons, we affirm the decision of the court below.
 {¶ 2} On October 2, 2005, Phipps was issued a traffic citation by Highway Patrol Trooper, Seth Howard, for Operating a Vehicle Under the Influence of Alcohol, a *Page 2 
misdemeanor of the first degree in violation of R.C. 4511.19(A)(1)(a). On October 4, 2005, Phipps entered a plea of not guilty to the charge.
 {¶ 3} On December 2, 2005, Phipps filed a Motion to Suppress. On February 1, 2006, the court held a hearing on Phipps' motion.
 {¶ 4} At this hearing, Trooper Howard testified that in the early morning of October 2, 2005, he was on duty at the Ravenna Patrol Post, on State Route 59 in Franklin Township. Howard had arrested another person earlier that evening for Driving Under the Influence and was completing the paperwork entailed by that arrest. Howard advised the arrestee to call for someone to pick her up and to make sure the person she contacts has not been drinking. The arrestee expressed uncertainty whether the person she contacted would actually come to pick her up and whether he would be impaired or not. Howard decided to watch for the person coming to pick the arrestee up, as her comments had made him suspicious that the person might be drinking.
 {¶ 5} At about 3:00 a.m., Trooper Howard observed Phipps pull into the Patrol Post parking lot and back his vehicle into a parking spot. Howard testified that there was nothing about the way in which Phipps operated his vehicle to suggest that he was alcohol impaired. After Phipps had parked the vehicle, two passengers exited the vehicle and entered the Patrol Post.
 {¶ 6} Trooper Howard asked the passengers where the driver of the vehicle was and they told him the driver was still in the vehicle. Howard exited the Patrol Post with the passengers and approached the vehicle. Howard "made contact" with Phipps, seated in the driver's seat, and asked him for identification. Howard immediately "smelled a strong odor of alcohol" and noticed that Phipps' "eyes were red and *Page 3 
bloodshot." Howard asked Phipps if he had been drinking, and Phipps replied that he had drunk three beers.
 {¶ 7} Trooper Howard then had Phipps perform the following field sobriety tests, the horizontal gaze nystagmus test, the walk and turn test, and the one-leg stand test. Phipps failed all three tests. Howard then had Phipps take a portable breath test which indicated Phipps' BAC was 0.172. Thereupon, Howard placed Phipps under arrest for Operating a Vehicle Under the Influence of Alcohol.
 {¶ 8} At the suppression hearing, Phipps argued Trooper Howard lacked any reasonable grounds for approaching Phipps' vehicle and investigating a potential Operating a Vehicle Under the Influence charge. The trial court disagreed, noting that Phipps' failure to enter the Patrol Post raised justifiable suspicions in Howard's mind regarding Phipps' impairment and that Howard had an "affirmative duty" to make sure that he did not release the arrestee to someone with impaired driving ability. Accordingly, the court denied Phipps' motion.
 {¶ 9} On April 7, 2006, Phipps entered a plea of no contest to Operating a Vehicle Under the Influence of Alcohol. Phipps appealed this decision. Since the trial court had not imposed a sentence, however, this court dismissed the appeal on July 20, 2006, for lack of a final, appealable order.
 {¶ 10} On August 30, 2006, the municipal court imposed a fine on Phipps of $1,000, with $650 suspended, suspended Phipps' license for six months, and sentenced Phipps to 180 days in the Portage County Jail, suspending the jail sentence provided he completes DUI school, follows the recommendations and monitoring by the Adult Probation Department, has no alcohol-related offenses for two years, pays all *Page 4 
fines and court costs, does not drive until properly licensed, and completes 16 hours of community service. The court stayed the execution of its sentence pending appeal to this court.
 {¶ 11} Phipps timely appeals and raises the following assignment of error: "The trial court erred to the prejudice of the defendant/appellant by overruling defendant/appellant's motion to suppress the reasonable grounds for the stop, the results of any and all blood, breath or urine tests taken of the defendant/appellant in conjunction with this case due to the fact that the arresting officer did not have a reasonable, articulable suspicion to believe that defendant/appellant was engaging in illegal activity at the time the arresting officer approached the defendant's vehicle and placed him under arrest."
 {¶ 12} "The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses."Wickliffe v. Kirara, 11th Dist. No. 2006-L-172, 2007-Ohio-2304, at ¶ 14 (citations omitted). "The trial court is best able to decide facts and evaluate the credibility of witnesses. Its findings of fact are to be accepted if they are supported by competent, credible evidence."State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, at ¶ 41. "Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts." Kirara, 2007-Ohio-2304, at ¶ 14 (citations omitted); Mayl, 2005-Ohio-4629, at ¶ 41 ("we are to independently determine whether [the trial court's factual findings] satisfy the applicable legal standard") (citation omitted).
 {¶ 13} Phipps argues on appeal that Trooper Howard had no reasonable grounds to approach the vehicle and question Phipps. The State argues that, under the totality *Page 5 
of the circumstances, Howard had a reasonable suspicion based upon the arrestee's comments, Phipps' failure to enter the Patrol Post, and Howard's affirmative duty to protect the arrestee.
 {¶ 14} We begin our analysis by considering whether it was necessary for Trooper Howard to have a reasonable suspicion of criminal activity in order to approach and question Phipps.
 {¶ 15} The Fourth Amendment to the United States Constitution provides for the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Unless Phipps were being searched or seized at the time Trooper Howard approached and questioned him, the Fourth Amendment is not implicated.State v. Welz (Dec. 9, 1994), 11th Dist. No. 93-L-137, 1994 Ohio App. LEXIS 5528, at *4 ("[t]he Fourth Amendment cannot be invoked unless the person has been `seized'").
 {¶ 16} It is well-established that "[n]ot every encounter between a police officer and a citizen constitutes an unreasonable seizure under the Fourth Amendment." United States v. Barry (C.A.8 2005),394 F.3d 1070, 1074 (citations omitted).
 {¶ 17} "Obviously, not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred."Terry v. Ohio (1968), 392 U.S. 1, 20 n. 16. "[A] person is `seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. * * * As long as the person to whom *Page 6 
questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." United States v. Mendenhall (1980), 446 U.S. 544,553-554.
 {¶ 18} The United States Supreme Court has made it clear that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free `to disregard the police and go about his business,' * * * the encounter is consensual and no reasonable suspicion is required."Florida v. Bostick (1991), 501 U.S. 429, 434 (citation omitted). For example, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." Florida v. Royer (1983), 460 U.S. 491, 497.
 {¶ 19} Federal precedents make it abundantly certain that the act of a police officer approaching an individual in a parked vehicle and asking him questions does not constitute a "seizure" for the purposes of theFourth Amendment. See Barry, 394 F.3d at 1075-1076 (officer who approached a parked vehicle in an alley and knocked on the window until the window was opened did not effect a seizure); United States v.Williams (C.A.3 2005), 413 F.3d 347, 352 (officers who approached a parked van in their cruiser, exited their vehicle, and approached the van on foot did not effect a seizure); United States v. Hendricks (C.A.7 2003), 319 F.3d 993, 1000-1001 (officer who followed a vehicle into a gas station without activating his overhead lights and approached the *Page 7 
vehicle did not effect a seizure); United States v. Baker (C.A.11 2002),290 F.3d 1276, 1279 (officer who approached, on foot, a vehicle stopped in traffic and questioned the occupants did not effect a seizure);Latta v. Keryte (C.A.10 1997), 118 F.3d 693, 699-700 (officer who approached a vehicle stopped on a public highway and asked the driver to exit the vehicle did not effect a seizure); United States v. Kim (C.A.9 1994), 25 F.3d 1426, 1430 (where "officers come upon an already parked car * * * the driver is not clearly stopped in any sense ab initio, except of his own volition"); United States v. Encarnacion-Galvez (C.A.5 1992),964 F.2d 402, 410 (officers who approached a vehicle stopped in a parking lot and asked the occupants for identification did not effect a seizure).
 {¶ 20} The Ohio decisions addressing this issue are consistent with the federal cases. In State v. Johnston (1993), 85 Ohio App.3d 475, the court held "[l]aw enforcement officers do not violate theFourth Amendment by merely approaching an individual on the street or in another public place. * * * More pertinently, the mere approach and questioning of persons seated within parked vehicles does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts." Id. at 478 (citations omitted). Accord State v.Kinkopf (June 9, 2000), 11th Dist. No. 99-L-034, 2000 Ohio App. LEXIS 2529, at *5-*6 ("a seizure does not occur when a single police officer approaches a parked vehicle and engages the occupants in conversation") (citations omitted); State v. Patterson, 9th Dist. No. 23135,2006-Ohio-5424, at ¶ 17 ("[a] seizure does not occur when an officer `merely approaches] an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen'") *Page 8 
(citation omitted); State v. Boys (1998), 128 Ohio App.3d 640, 642
("when the police approach and question the occupants of a parked vehicle, their conduct does not constitute a seizure and does not require a reasonable and articulable suspicion of criminal activity").
 {¶ 21} In light of these precedents, Trooper Howard's approaching Phipps' vehicle and asking Phipps for identification and whether Phipps had been drinking does not constitute a seizure for the purposes of theFourth Amendment. Phipps was voluntarily on the grounds of the Patrol Post and was not under any compulsion to speak with Trooper Howard. Accordingly, it was not necessary that Howard have a reasonable suspicion to do so.
 {¶ 22} The sole assignment of error is without merit. The decision of the Portage County Municipal Court, Kent Division, denying Phipps' motion to suppress, is affirmed.
CYNTHIA WESTCOTT RICE, P.J., concurs,
 COLLEEN MARY O'TOOLE, J., dissents. *Page 1