OPINION
{¶ 1} Defendant-appellant, Robert A. Hurtuk, appeals the denial of his Motions to Suppress and subsequent convictions for Operating a Vehicle Under the Influence of Alcohol and Underage Consumption of Alcohol, in the Portage County Municipal Court, Ravenna Division. For the following reasons, we affirm the decision of the court below. *Page 2 
 {¶ 2} On December 3, 2007, Hurtuk was issued separate Complaints for Operating a Vehicle Under the Influence of Alcohol, a misdemeanor of the first degree in violation of R.C. 4511.19(A)(1)(a), and Underage Consumption of Alcohol, a misdemeanor of the first degree in violation of R.C. 4301.69(E)(1).
 {¶ 3} On February 12, 2008, Hurtuk filed a Notice and Motion to Suppress in both cases. On July 1, 2008, the municipal court held a joint hearing on Hurtuk's Motion, at which Highway Patrol Trooper, John L. Lamm, testified on behalf of the State.
 {¶ 4} On July 10, 2008, the municipal court denied Hurtuk's Motion. The court made the following, undisputed findings: "Trooper Lamm testified that he had arrested Lauren McMasters for OVI and advised her, in accordance with Ohio State Patrol policy, that she could call someone to pick her up provided that person had a valid operator's license and had not been drinking. Ms. McMasters made a telephone call. Defendant Robert Hurtuk arrived at the Ohio State Patrol post with a passenger and correctly parked in a parking space in the public parking area. The passenger went into the post to pick up Ms. McMasters while Defendant remained in the vehicle. Trooper Lamm asked Defendant to come into the post, show a valid operator's license and provide a signature that Ms. McMasters was being released to him. After Defendant voluntarily entered the post, Trooper Lamm noticed a moderate odor of an alcoholic beverage. Trooper Lamm also testified that Defendant had slightly slurred speech and glassy eyes. Defendant, age 19, admitted drinking alcohol and driving to the post."
 {¶ 5} On July 30, 2008, Hurtuk entered a No Contest plea to the charge of OVI and was sentenced as follows: a $1,000 fine ($650 suspended); 180 days in the Portage County Jail (177 days suspended pending the completion of community work *Page 3 
service and other conditions); and the suspension of his operator's license for six months. The "balance" of the pending charges were dismissed on the motion of the Prosecutor. The municipal court stayed execution of the sentence pending appeal.
 {¶ 6} On August 28, 2008, Hurtuk filed Notices of Appeal from both municipal court cases. This court consolidated both appeals for all purposes.
 {¶ 7} Hurtuk raises the following assignments of error:
 {¶ 8} "[1.] Trooper Lamm lacked any specific and articulable facts to establish a reasonable suspicion that defendant was involved in criminal activity."
 {¶ 9} "[2.] The State failed to demonstrate that defendant freely and voluntarily consented to the warrantless search."
 {¶ 10} "The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses."State v. Ferry, 11th Dist. No. 2007-L-217, 2008-Ohio-2616, at ¶ 11
(citations omitted). "The trial court is best able to decide facts and evaluate the credibility of witnesses. Its findings of fact are to be accepted if they are supported by competent, credible evidence."State v. Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, at ¶ 41. "Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts." Ferry, 2008-Ohio-2616, at ¶ 11
(citation omitted); Mayl, 2005-Ohio-2304, at ¶ 41 ("we are to independently determine whether [the trial court's factual findings] satisfy the applicable legal standard") (citation omitted).
 {¶ 11} In his first assignment of error, Hurtuk argues that Trooper Lamm did not have any "factual or legal justification" to detain him. Hurtuk's argument does not apply to the present circumstances, as there is no evidence that Trooper Lamm stopped, *Page 4 
detained, or did anything with respect to him that would implicate the Fourth Amendment's prohibition against unreasonable searches and seizures. As the municipal court correctly noted, the outcome of this appeal is governed by our decision in State v. Phipps, 11th Dist. No. 2006-P-0098, 2007-Ohio-3842.
 {¶ 12} In Phipps, as in this case, the defendant drove to a State Patrol Post in order to pick up an OVI arrestee. After the defendant parked the vehicle, passengers exited the vehicle and entered the Post. Thereupon, a Trooper left the Post to speak with the driver of the vehicle, which ultimately led to the defendant-driver's arrest for OVI. Id. at ¶¶ 4-7.
 {¶ 13} As in this case, the defendant in Phipps argued that the Trooper had no "reasonable grounds" to approach his vehicle and initiate questioning. Id. at ¶ 13. This court held that the Trooper did not need to justify his conduct inasmuch as approaching a parked vehicle and asking the driver for identification and whether he had been drinking "[do] not constitute a seizure for the purposes of the Fourth Amendment." Id. at ¶ 21. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions."Florida v. Bostick (1991), 501 U.S. 429, 434 (citation omitted);Phipps, 2007-Ohio-3842, at ¶¶ 19-20 (citing several federal and state cases with similar factual patterns).
 {¶ 14} Hurtuk asserts that Phipps is distinguishable because the Trooper in that case had reasonable grounds for suspecting that the driver may have been impaired. Id. at ¶ 4 (the arrestee made the comment that she was uncertain whether the pick-up driver would be impaired or not). In Phipps, we did not hold that the officer had a reasonable suspicion that the driver might be impaired. On the contrary, we held that *Page 5 
such a determination was unnecessary to resolve the issue before us. So in the present case, we express no opinion as to whether Trooper Lamm had reason to believe Hurtuk had been drinking when he approached the vehicle. The undisputed evidence is that Lamm asked Hurtuk to enter the Post to present his operator's license and sign for McMaster's release, pursuant the State Patrol policy.[1] Lamm's conduct required no special justification.
 {¶ 15} The first assignment of error is without merit.
 {¶ 16} Hurtuk next argues that the State failed to demonstrate that he "freely and voluntarily consented to the warrantless search." Initially, we note that Hurtuk did not raise the consent issue in his Motion to Suppress, which focused solely on Trooper Lamm's approaching the vehicle, and thus may not be raised on appeal. Crim. R. 47 (a motion must "state with particularity the grounds upon which it is made");Willoughby v. Cicek, 11th Dist. No. 92-L-203, 1994 Ohio App. LEXIS 1145, at *9-*10, citing Xenia v. Wallace (1988), 37 Ohio St.3d 216, 218.
 {¶ 17} We also note that Hurtuk was not "searched" by Trooper Lamm, but only questioned.
 {¶ 18} "Prosecutor: And did [Hurtuk] agree to come in and sign [for McMaster's release] on his own volition?"
 {¶ 19} "Lamm: Yes. We did not have a problem."
 {¶ 20} "Prosecutor: So what transpired then?" *Page 6 
 {¶ 21} "Lamm: Both of us walked into the post. When you walk into the post
the first room you come into is a lobby and while we were standing in the lobby talking to him I noticed that his eyes were glassed over, and I noticed a moderate odor of an alcoholic beverage coming from his person."
 {¶ 22} "Prosecutor: Did you inquire of the Defendant's age at that point?"
 {¶ 23} "Lamm: Yes. He identified himself as a 19-year-old, and then I did ask him how much he had to drink. *** He said that he had four to five beers earlier."
 {¶ 24} Arguably, if there were evidence that Hurtuk's freedom of action had been curtailed to a degree "associated with formal arrest," Miranda warnings would have been necessary in order to question him.Berkemer v. McCarty (1984), 468 U.S. 420, 440 (citation omitted). In the record before us, however, there is no evidence that Hurtuk's freedom of action had been curtailed at all.
 {¶ 25} The second assignment of error is without merit.
 {¶ 26} For the foregoing reasons, the decision of the Portage County Municipal Court, Ravenna Division, denying Hurtuk's Motion to Suppress is affirmed. Costs to be taxed against appellant.
TIMOTHY P. CANNON, J., concurs, COLLEEN MARY O'TOOLE, J., concurs in judgment only.
[1] Trooper Lamm explained the "rationale" for the policy as follows: "The rationale is basically that if I arrest somebody, when they left the post I do want to make sure that I am not letting that person into the custody of somebody else that's impaired behind the wheel, technically putting their life in danger when they leave the post." Cf.Clemets v. Heston (1985), 20 Ohio App.3d 132, 136 (an officer who takes custody of another has a "duty to act affirmatively to protect the arrestee from harm and provide for his care and safety [that] continues for the duration of that relationship — i.e., until the arrestee-prisoner is released from custody"). *Page 1