[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 08, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-16585
Non-Argument Calendar

_____
D. C. Docket No. 01-00028-CR-4-SPM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LYNDON BURL BAKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____
**(May 8, 2002)**

Before CARNES, HULL and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

A federal grand jury returned a single-count indictment charging co-

defendants, Lyndon Burl Baker and Dwayne Everett Jackson, with conspiracy with

intent to distribute more than fifty grams of cocaine base (crack cocaine) and a substance containing cocaine (powder cocaine), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 841(b)(1)(C), and 846. Jackson pleaded guilty. Baker filed a motion to suppress evidence and statements as fruits of an initial unlawful detention, contending that the police violated his Fourth Amendment rights. The government asserted that the initial interaction between Baker and the police was a lawful consensual encounter. After a hearing, the district court denied Baker's motion to suppress. The court held that the encounter was not an unconstitutional seizure. The case proceeded to trial and the jury returned a guilty verdict. Baker appeals from the denial of his motion to suppress. We affirm.

The relevant facts are undisputed. On November 3, 2000, Tallahassee Police Department officers, John Hoover and Roderick Looney, were engaged in a drug interdiction operation at the Greyhound bus depot on Tennessee Street in Tallahassee, Florida. They were dressed in plain clothes. A Greyhound employee told Hoover that he had seen Baker motion to Jackson, an inbound passenger who had a jacket and bag, to go into the terminal. Hoover found this behavior odd so he had Looney follow the men.

Looney saw the men heading towards the parking lot. The men got into a car. Michael Demoros Knight drove the car towards the exit of the bus terminal

2

parking lot, Baker was in the passenger seat, and Jackson was in the back seat on the passenger side. Knight stopped the car because it was blocked by traffic on Tennessee Street but left the car engine running. Hoover walked up to the car, displayed his badge, and asked Knight to roll down his window. Knight did so. Hoover then asked Knight if Hoover minded if he spoke to the back seat passenger, Jackson. Jackson, without being asked, got out of the car and proceeded to the rear of the car, leaving the jacket and bag on the back seat. Hoover walked to the rear of the car. Looney then approached and asked the men whether any of them owned the jacket and bag. Jackson said they were not his. Upon further inquiry, Baker and Knight also denied ownership. Since the items were not claimed by anyone in the car, Looney asked if he could examine them. Knight, Baker and Jackson agreed. Looney examined the jacket and found drugs. The officers arrested all three men.

When reviewing a motion to suppress, the district court's finding of fact are reviewed for clear error, and the court's application of the law to those facts is reviewed de novo. See United States v. Gordon, 231 F.3d 750, 753-54 (11th Cir.2000).

The issue of first impression in this circuit is whether the interaction between the police and the individuals in the car that was neither parked nor

3

moving was a consensual encounter under the Fourth Amendment.

Baker asserts that the district court erroneously concluded that his initial interaction with the police, while he was in the car that was stopped due to traffic, was constitutional. He argues that the police did not have probable cause or reasonable suspicion to detain him. The government acknowledges that prior to finding the drugs the officers did not have probable cause or reasonable suspicion to detain Baker or the other men. However, the government characterizes the initial interaction between the officers and the men as a consensual encounter that ended when the officers discovered the drugs, which gave probable cause for the arrests. According to Baker, any time a police officer approaches or interacts with a car that is moving or stopped, but not parked, the officer seizes the individuals in the car for Fourth Amendment purposes. We disagree.

In the seminal search and seizure case, the Supreme Court held that not all personal intercourse between policemen and citizens involves 'seizures' for Fourth Amendment purposes. See Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id. The mere fact that a law enforcement officer approaches an individual and so identifies himself, without more, does not result in a seizure. See Florida v. Royer,

4

460 U.S. 491, 497 (1983) (plurality opinion). The societal pressure to stop and speak with law enforcement is not a sufficient restraint of liberty to raise the interaction to a level that requires constitutional protection.

In order for there to be a sufficient restraint on liberty to elevate an interaction between law enforcement and an individual to constitutional dimensions that trigger Fourth Amendment protection, the police must exert a show of authority that communicates to the individual that his liberty is restrained, meaning he is not free to leave. See Terry, 392 U.S. at 19 n.16. The show of authority can be in several forms, such as "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Mendenhall, 446 U.S. 544, 554 (1980). In sum, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Florida v. Bostick, 501 U.S. 429, 437 (1991) (quoting Michigan v. Chesternut, 486 U.S. 567, 569 (1988)).

Here, the police officer did not make a sufficient show of authority to sufficiently convey to Baker that his liberty was restrained. Hoover, dressed in

5

plain clothes, walked up to the car that was stopped because it was blocked by traffic. While Hoover displayed his badge he did so to identify himself as a police officer not to detain the vehicle. He did not tell Knight to turn off the engine and he asked to speak with the men inside the car. Knight consented. The officers did not display a weapon or use any language or tone that would indicate that compliance with the officers' request was compelled. Baker was free to decline to answer the officers' questions at any time but instead engaged in conversation. The record does not indicate that the officers behaved in a manner that was threatening. Before the officers found the drugs they did not touch Baker. Baker could have ended the encounter at any time prior to the drugs being found. Just because Baker was in a car that was momentarily stopped waiting for traffic to clear does not elevate this interaction to that of a seizure. For these reasons, the district court did not error in holding that this was a consensual encounter not protected by the Fourth Amendment.

Our holding that there was no seizure in this case is in line with the Sixth and Second Circuits. In United States v. Caicedo, 85 F.3d 1184 (6th Cir.1996), the Sixth Circuit considered a similar issue and held that a police officer did not effect a seizure when he stopped a slowly moving car to talk to the individuals inside the car. In Caicedo, William Ryan and co-defendant Anthony Caicedo were in a car

6

leaving the parking lot exit of a bus terminal.  <u>Caicedo</u>, 85 F.3d at 1187.  Ryan was driving and passed police Officer Mercado who was armed, on foot and in full uniform.  <u>Id.</u>  Mercado identified himself as a narcotics officer and asked if Ryan minded if they talked for a minute.  <u>Id.</u>  Ryan voluntarily stopped the car, leaving the engine running, and indicated he did not mind.  <u>Id.</u>  Officer Bogenschutz approached and also asked Ryan if he would speak with him.  <u>Id.</u> at 1191.  Ryan responded in a polite and cooperative manner.  <u>Id.</u>  The officers did not display their weapons or act in an intimidating manner.  <u>Id.</u>  The court held the initial encounter between Ryan and the officers was simply not a seizure, reasoning that Ryan was free to decline to answer the officer's questions at any time.  <u>Id.</u>  <u>See also</u>, <u>United States v. Adegbite</u>, 846 F.2d 834, 838 (2nd Cir.1988) (holding that a seizure did not occur where the car had barely started in a parking lot, moved only fifteen to twenty yards, and was waved to a halt by DEA agents on foot and in plain clothes).

For the reasons stated above, the district court is AFFIRMED.