**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Samuel INGRAM, Defendant—
Appellant.**

No. 04–10549.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 17, 2005.

Decided Oct. 28, 2005.

Susan Knight, USSF–Office of the U.S. Attorney, San Francisco, CA, for Plaintiff–Appellee.

Daniel Blank, FPDCA–Federal Public Defender's Office (San Francisco), San Francisco, CA, for Defendant–Appellant.

Before REAVLEY,* T.G. NELSON, and RAWLINSON, Circuit Judges.

## MEMORANDUM **

At approximately 8:58 p.m., a United States Park Police Officer noticed a lone vehicle parked at an "awkward angle." The officer decided to conduct a "welfare check" of the car's occupants. He approached the driver's side of the vehicle, while another officer approached from the passenger's side. Both men were in full uniform and armed. When the officer reached the front driver's side window, he directed Samuel Ingram to roll down his window. When Ingram complied, the officer was immediately engulfed by the distinct odor of marijuana. Ingram subsequently moved to suppress the evidence found in his vehicle as fruits of an unlawful search and seizure.

A seizure occurs for purposes of the Fourth Amendment when, "taking into account all of the circumstances surrounding

---

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir.2004) (citation and internal quotation marks omitted).

The fact that the government labels this encounter a "welfare check" is not controlling. The appropriate inquiry is whether a reasonable person in Ingram's position would feel free to ignore the officer's order. Under the circumstances of this case, we hold that a reasonable person would not feel free to ignore the command, and a seizure occurred. *See id.* Absent reasonable suspicion justifying the seizure, a Fourth Amendment violation occurred. *See INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).

■ We do not agree with our dissenting colleague that the seizure can be justified as a permissible exercise of the community caretaking function expected of police officers. Once the officers were able to observe that the passengers were in no distress of any kind, no "reasonable grounds [existed] to believe that there [was] an emergency at hand and an immediate need for their assistance for the protection of life or property." *United States v. Cervantes*, 219 F.3d 882, 888 (9th Cir. 2000). Because the government conceded the absence of reasonable suspicion and because a seizure occurred, the motion to suppress should have been granted.

REVERSED and REMANDED.

REAVLEY, Circuit Judge, dissenting.

The panel would have us require reasonable suspicion of criminal activity before approaching a car awkwardly parked in a dark public space to check on the welfare of the occupants. I disagree.

The car was parked alone at an angle on government premises at night. The officer said he asked Ingram if he could roll down the window. Ingram said the officer "politely but firmly" told him to roll the window down. The district judge assumed the officer "told" the defendant to do so. I agree with the judge that this was not an illegal seizure.

This circuit has joined our sister circuits in recognition that "an officer's approach of a car parked in a public place does not constitute an investigatory stop or higher echelon Fourth Amendment seizure." *United States v. Kim;*[1] *see, e.g. United States v. Barry*[2] (holding that officer's approach of parked car and knocking three times until window was rolled down did not constitute a seizure); *United States v. Hendricks*[3] (finding no seizure where officer approached vehicle parked at gas station); *United States v. Baker*[4] (holding that encounter with police officers, who approached running vehicle stopped in traffic and made inquiries, was not a seizure); *Latta v. Keryte*[5] (finding no seizure where officer approached a parked car and asked defendant to get out); *United States v. Encarnacion–Galvez*[6] (finding no seizure where officers approached a parked car and asked for identification). Contrary to the panel, I do not find the *Kim* and *Barry* cases distinguishable from this case. Indeed, the conduct in *Kim* (where the officers parked their vehicle so as to partially block the defendant's egress) and in *Barry* (where the officer continued knocking on the window to require a re-

1. 25 F.3d 1426, 1430 n. 1 (9th Cir.1994).

2. 394 F.3d 1070 (8th Cir.2005).

3. 319 F.3d 993 (7th Cir.2003).

4. 290 F.3d 1276 (11th Cir.2002).

5. 118 F.3d 693 (10th Cir.1997).

6. 964 F.2d 402, 410 (5th Cir.1992).

sponse) was considerably more coercive than the officers' conduct here.

A seizure does not occur simply because a police officer approaches an individual to make inquiries. *Florida v. Bostick.*[7] "So long as a reasonable person would feel free to 'disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Id.* "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.*

The test under *United States v. Washington* is whether the reasonable person would think that compliance with the police would be compelled based on the officer's "officious or authoritative manner."[8] Under the circumstances and the police conduct here, a reasonable person would regard the encounter as what it was—an inquiry—and not a show of force or authority to restrain the person. There was no threatening behavior by the officer. Officer Martinez identified himself and neither displayed his weapon nor challenged Ingram. Officer Johnson was visible, but did not join in the initial discussion. Officer Martinez simply instructed Ingram to roll down the window so that conversation could be conducted. He did not persist in his demands in such an extreme fashion as to communicate to Ingram that he would not take no for an answer. That conduct, without more, did not amount to an intrusion upon any constitutionally protected interest. Ingram was free to decline Officer Martinez's request to roll down the window but instead chose to do so and engage in conversation.

It does not follow that there was a seizure because some persons, under the circumstances, would have complied or felt they should comply with Officer Martinez's instruction. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, does not eliminate the consensual nature of the response. The societal pressure to cooperate with law enforcement is not a sufficient restraint of liberty to raise the interaction to a level that requires constitutional protection. *Baker.*[9] Police are allowed, without the justification of an articulated basis for suspicion, to seek cooperation, even though many citizens will defer to this authority of the police because they believe—in some vague way—that they should. Wayne R. LaFave Et Al., 2 Crim. Proc. § 3.8(c) (2d ed.1999). The key is that police authority not be exercised so that it unambiguously goes beyond simply seeking to take advantage of "the moral and instinctive pressures to cooperate" shared by the general citizenry. *Id.*

Likewise, it does not matter that Ingram may have thought the officers would inevitably escalate the encounter because he was, indeed, doing something criminal. The Supreme Court has clarified that "the reasonable person standard presupposes an innocent person." *Bostick.*[10] Thus, as Professor LaFave has recognized, the free-to-go-about-one's business test is applied from the perspective of the reasonable person looking at what the police officer is doing or saying without the baggage of the belief that the officer surely will detain him because there is a basis for his arrest. LaFave, § 3.8(c)

While the district court did not turn to another consideration, except to say that the officers acted reasonably, I would deny

---

**7.** 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991).

**8.** 387 F.3d 1060, 1068 (9th Cir.2004).

**9.** 290 F.3d 1276, 1278 (11th Cir.2002).

**10.** 501 U.S. at 438, 111 S.Ct. 2382.

suppression for another reason. The Supreme Court and this circuit have recognized that, beyond criminal investigation, police have community caretaking functions that justify action without a warrant and without suspicion of criminal conduct. *Cady v. Dombrowski*;[11] *United States v. Bradley*;[12] *United States v. Cervantes.*[13] Police officers acting under the community caretaking function need only point to specific and articulable facts to justify their reasonable belief that a citizen might need aid and show that the action is not primarily motivated by intent to arrest and seize evidence. *Cervantes.*[14]

Under the community caretaker doctrine, the reasonable suspicion must be of need, not criminal activity. *See People v. Ray.*[15] The officers in this case had that. The decision to approach Ingram's automobile was prompted by concern for the safety of its occupants. There was no suggestion that the welfare check was a pretext concealing investigatory police motive.

When a police officer observes circumstances or conduct suggesting that a citizen might be in need of assistance or is in peril, then that officer is entitled to stop and investigate regardless of the lack of any suspicion of criminal activity. After all, as the California Supreme Court notes, that is what we expect them to do:

"[W]e commend the officers for at least doing their community service to try to protect people and help people.... That is what law-abiding, tax-paying citizens desire and expect of the local constabulary.... When officers act in

their properly circumscribed caretaking capacity, we will not penalize the [government] by suppressing evidence of crime they discover in the process."

*Ray.*[16] *See also Martin v. City of Oceanside*[17] ("Citizens would have been justifiably outraged if the officers had delayed their community caretaking responsibilities only to discover later that [defendant] had become the victim of an otherwise preventable crime or was in need of assistance, ...").

Because indicia of undue intimidation or force are absent in this case and because the officers had reasonable basis to approach Ingram's car to investigate the well-being of the occupants, I would affirm the district court.

**11.** 413 U.S. 433, 447, 93 S.Ct. 2523, 2531, 37 L.Ed.2d 706 (1973).

**12.** 321 F.3d 1212, 1214–15 (9th Cir.2003).

**13.** 219 F.3d 882, 889–90 (9th Cir.2000).

**14.** At 889–90.

**15.** 21 Cal.4th 464, 471, 88 Cal.Rptr.2d 1, 981 P.2d 928 (1999) ("Officers view the occupant as a potential victim, not as a potential suspect").

**16.** At 479, 88 Cal.Rptr.2d 1, 981 P.2d 928.

**17.** 360 F.3d 1078, 1084 (9th Cir.2004).