[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12815
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 19, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00168-CR-ODE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUSTIN HUNTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 19, 2010)

Before TJOFLAT, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

A Northern District of Georgia jury convicted Justin Hunter of possession of

a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and the district court sentenced him to prison for a term of 180 months.[1] He now appeals his conviction, claiming that the district court erred in denying his pre-trial motion to suppress and abused its discretion in admitting certain evidence at trial.

Hunter's arrest and eventual conviction stemmed from his encounter with officers of the Atlanta Police Department on the evening of November 9, 2007. That evening, four officers, Valle, Condon, Esquilin, and Jackson, members of the Department's ("APD") Red Dog Unit, a drug task force, were conducting a routine patrol in an apartment complex in the area of 390 Thamesville Boulevard. They arrived at the complex in one police car. Officers Esquilin and Jackson exited the vehicle at the entry to the apartment complex in order to perform a walk-through of the area to detect any illegal activity. Meanwhile, Officers Valle and Condon drove into the complex parking lot, in the middle of the complex. The windows of their vehicle were rolled down, and as the two officers arrived in the parking lot, they smelled the odor of burnt marijuana. They looked around the parking lot searching for the source of the odor, and saw Hunter sitting in a parked green Buick. The officers noticed that Hunter was smoking what, based on their training and experience, they believed to be a marijuana cigarette. They got out of their

---

[1] Hunter was charged in a four-count indictment. The jury acquitted him of the first three counts, which involved or were related to drug trafficking.

police car and walked to the Buick. As they approached the Buick, the order of marijuana became stronger. When Hunter noticed them walking toward him, he attempted to put out the cigarette.

Officer Condon walked up to the passenger side of the Buick and saw that the window was partially down. Officer Valle came to the driver side of the Buick and saw that the driver-side window was fully rolled down. Valle asked Hunter for identification. At the same time, he noticed the smoldering marijuana cigarette in the ashtray and a small bag containing a green leafy substance on the seat next to Hunter which he believed to be marijuana. Hunter handed Officer Valle his identification. Because saw illegal drugs in the Buick, he asked Hunter to step out of the car, intending to place him under arrest. Hunter refused and began asking, "Why?" Valle and Officer Condon (who was on the other side of the Buick), repeatedly asked him to get out of the car but Hunter still refused. He then resisted the officers' efforts to remove him from the car, while continuing to ask what he had done and screaming at the crowd that was gathering in the parking lot. To assist Officer Valle in removing Hunter from the car, Condon unlocked and entered the passenger side door and began pushing Hunter out of the driver's door. As he pushed against Hunter's side, he felt a handgun at Hunter's waist. He alerted Officer Valle to the presence of a firearm and seized a Glock, .9mm pistol

3

from the holster on Hunter's waist. The officers eventually removed Hunter from the car and placed him under arrest for possessing marijuana.

## I.

As noted above, Hunter claims that the district court erred when it denied his motion to suppress the evidence obtained at the scene of his arrest because the Government failed to demonstrate that the officers had reasonable suspicion to seize him. He argues that the encounter with police was never a consensual one but assumes *arguendo* that the seizure took place when the officers ordered him from the car and maintains that the testimony of his three lay witnesses established that the officers did not have reasonable suspicion because all three testified that he was not smoking marijuana when the officers approached.

Rulings on motions to suppress involve mixed questions of fact and law. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). Therefore, we review the district court's factual findings for clear error and its application of the law to the facts *de novo*. *Id.* Moreover, "when considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below." *Id.* (citation omitted). Finally, in evaluating the factual version of events between law enforcement officers and a defendant, we will defer to the magistrate judge's credibility determinations unless his understanding of the facts appears to

be unbelievable. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

"The Fourth Amendment to the United States Constitution protects the right of persons to be free from unreasonable searches and seizures." *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). Evidence that is uncovered as the result of an unreasonable search or seizure must be suppressed as "fruit of the poisonous tree." *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 1961, 6 L.Ed.2d 1081 (1961). "There are three broad categories of police-citizen encounters for purposes of our Fourth Amendment analysis: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006).

The first category of police-citizen encounters does not implicate the Fourth Amendment. *Perez*, 443 F.3d at 777. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200, 122 S.Ct. 2105, 2110, 153 L.Ed.2d 242 (2002). Thus, "[o]fficers are free, without any level of suspicion, to approach citizens on the street or in a public

place." *Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006). Accordingly, we have held that it was permissible for officers to approach a car that had stopped momentarily in traffic, regardless of whether the officers had reasonable suspicion of criminal activity, as long as the officers did not exert a sufficient show of authority to communicate to the individual that his liberty was restrained. *United States v. Baker*, 290 F.3d 1276, 1278-79 (11th Cir. 2002). Such a show of authority could take the following forms: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 1278 (citation omitted). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. *Id.* at 1278-79 (quotation omitted).

Once the interaction rises to the level of a brief seizure or investigatory detention, then the officer must have reasonable, articulable suspicion that the individual has engaged in or is about to engage in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968). When analyzing whether the officers had reasonable suspicion, we look "at the totality of the

circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Perkins*, 348 F.3d at 970 (quotations omitted). The recognizable smell of marijuana is sufficient to establish reasonable suspicion. *See Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 675, 145 L.Ed.2d 570 (2000) (noting that "reasonable suspicion is a less demanding standard than probable cause") (quotation omitted); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (*en banc*) (finding that the smell of marijuana gave rise to probable cause).

Here, the district court properly denied Hunter's motion to suppress. The magistrate judge determined that the witnesses Hunter offered were not credible, and those credibility determinations are supported by the record and should not be disturbed. Therefore, the only credible testimony at the suppression hearing was that given by the officers, who testified that they smelled marijuana and saw Hunter smoking what appeared to be a marijuana cigarette. The odor of marijuana coming from Hunter's vehicle gave rise to probable cause and thus a lawful foundation to seize him.

II

Hunter claims argues that because whether the firearm was possessed in or affecting interstate commerce was "a finding at issue in the case," the district court

7

abused its discretion by allowing a Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") agent to testify that, in his opinion, the firearm traveled in or affected interstate commerce. He begins by noting that courts have held that the government may use expert testimony to prove the interstate nexus element and that it was proper for the agent to testify to where the firearm was manufactured, but maintains that it was improper for the prosecutor to then ask him a compound question which included whether the firearm had traveled in interstate or foreign commerce or whether it had affected interstate commerce. First, he argues that this compound question had the potential to confuse the jury, which is unacceptable under Rule 403 of the Federal Rules of Evidence. Second, he argues that only half of the question was relevant to the indictment, which charged him with possession of the firearm "in and affecting interstate commerce." Thus, the question of whether the firearm had traveled in interstate commerce was irrelevant. Third, he contends that the agent was not qualified to give an opinion as to whether the firearm had affected interstate commerce. Finally, he argues that the question impermissibly called for the agent to give his opinion on a legal conclusion.

We review the admissibility of expert testimony for abuse of discretion and cannot reverse "unless the ruling is manifestly erroneous." *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (*en banc*). Moreover, even if the

district court abused its discretion in admitting expert testimony, we will not reverse the defendant's conviction if the error was harmless. *United States v. Khanani*, 502 F.2d 1281, 1292 (11th Cir. 2007). An error is harmless unless there is a reasonable likelihood that it affected the defendant's substantial rights. *Id.* We assess the likelihood by examining the entire record, comparing the error with the strength of the evidence of defendant's guilt. *Id.*; *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999).

To convict under 18 U.S.C. § 922(g), the government must prove the following three elements beyond a reasonable doubt: (1) the defendant has been convicted of a crime punishable by imprisonment for a term exceeding one year, and (2) the defendant knowingly possessed a firearm or ammunition, (3) in or affecting interstate commerce. *United States v. Funches*, 135 F.3d 1405, 1406-07 (11th Cir. 1998). The jurisdictional element may be satisfied by proof that the firearm or ammunition traveled in interstate commerce. *United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996). Generally, expert testimony that the firearm traveled in interstate commerce is sufficient. *See United States v. Scott*, 263 F.3d 1270, 1274 (11th Cir. 2001) (noting that the prosecutor established the required interstate nexus through expert testimony that the firearm was manufactured in another state and had moved in interstate commerce).

Expert testimony is admissible if it concerns scientific, technical or other specialized knowledge that will aid the jury or other trier of fact to understand or resolve a fact at issue. Fed. R. Evid. 702. Pursuant to Federal Rule of Evidence 704(a), "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Thus, a witness may testify to his opinion on an ultimate issue of fact, but he cannot simply tell the jury what to decide. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). The witness also cannot testify to the legal implications of conduct because the court must be the jury's only source of law. *Id.* (finding that an expert witness's testimony amounted to a legal conclusion where he essentially testified that one party breached a contract).

Here, any abuse of discretion the court may have committed in allowing an expert witness to testify that the firearm and ammunition found on Hunter "traveled in or affected interstate commerce" was harmless. Although the agent's testimony did suggest to the jury that they should find that the interstate nexus element was met, it fell short of telling the jury that they should find Hunter guilty. *See Montgomery*, 898 F.2d at 1541. Moreover, even if it was error to allow the testimony, that error was harmless because Hunter had sufficient opportunity to cross-examine the agent on the basis for his opinion, the court gave the jury a

limiting instruction, and the unchallenged testimony that the guns and ammunition were manufactured outside of Georgia is sufficient to support the verdict even without the agent's opinion that they traveled in or affected interstate commerce

## III

Hunter argues that the district court abused its discretion by allowing Officer Condon to testify as a fact witness—regarding his possession of the pistol and the circumstances that led to his arrest—and as an expert witness regarding his knowledge and experience in narcotics investigations. Boiled down to its essentials, the argument is that Condon's testimony as an expert inappropriately served to bolster his testimony as a fact witness. Assuming for sake of discussion that the court abused its discretion as alleged, we find the abuse harmless. The evidence that Hunter violated 18 U.S.C. § 922(g)(1) was overwhelming.

AFFIRMED.