[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 12-13265

————————————————

D.C. Docket No. 2:11-cr-00345-AKK-JEO-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDDIE MICKENS,
a.k.a. Eddie Davis, Jr.,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama

————————————————

(August 29, 2014)

Before ED CARNES, Chief Judge, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Eddie Mickens was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), after a police officer saw him remove a firearm from his waistband and throw it beneath a nearby vehicle. The primary question presented in this appeal is whether Mickens had been seized at the time the officer saw him discard the weapon.

I.

On November 19, 2010, a number of Birmingham police officers were patrolling the city's North Avondale neighborhood, near the Tom Brown Village housing project. They were part of what's called a "high cop unit," and they were in the area in response to civilian complaints. During the afternoon, the officers proceeded to a parking lot across from the housing project that was reputed to be a hotbed of drug activity. The parking lot was located at the rear of a strip mall. Although the evidence on this point varied, apparently there were between 15 and 30 people, including the defendant Eddie Mickens, standing in that parking lot when the police arrived.

The police came in numbers. Testimony differed on this point as well, but somewhere between 6 and 10 police cars arrived on the scene. All of the cars were marked but none of them had its lights or sirens on. The cars entered single-file, and the first one or two stopped shortly after entering the parking lot which, one of

2

the officers would later recount, "sort of jammed up the entrance," making it "impossible for cop cars to surround the area."

Officer Steppe and his partner, Officer Blackmon, were in the first or second car to enter the parking lot. Within ten to twenty seconds after they drove into the lot and while they were still in the car, Steppe saw Mickens pull a handgun from his waistband and toss it underneath a nearby car. Steppe then pulled his car up to the vehicle that Mickens was standing next to, retrieved the discarded weapon (a Charter Arms .38 special revolver), and approached Mickens. He asked Mickens if he had a permit for the weapon, and when Mickens stated that he did not, Steppe arrested him for violating state firearms laws. Mickens had not been advised of his Miranda rights. Steppe testified that the questioning lasted a couple of minutes and that he never drew his gun or turned on his car's emergency lights. Mickens later pleaded guilty in municipal court to carrying a firearm without a permit, a crime that does not require the possession to have been knowing.

Other officers detained other people in the lot, but Steppe's partner, Blackmon, testified that he did not consider every person there to be under general detention. Steppe admitted that the parking lot was "not that big," and when questioned whether "[t]en police cars would pretty much surround the entire area," he answered, "possibly." Blackmon also testified, however, that it "was impossible for cop cars to surround the area and basically cordon it off" and that he

3

did not "remember anybody telling [the people in the parking lot] you're not free to go anywhere." Steppe testified that when he and the other officers pulled up, some of the people in the lot "attempted to kind of walk away." Both Mickens' stepdaughter and her friend, who were in the parking lot when the police cars drove up, did simply walk away.

A federal grand jury indicted Mickens for knowingly possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the evidence that the police had obtained against him. Initially, Mickens objected only to the presentation of evidence the police had obtained through Officer Steppe's questioning, arguing that he had been in custody at that time and that Steppe's failure to read Mickens his Miranda rights violated the Fifth Amendment. After an evidentiary hearing, the magistrate judge issued a report recommending that the motion to suppress be denied. Mickens objected to the report and recommendation, raising for the first time the argument that he had been seized when the police arrived at the parking lot. The district court overruled Mickens' objections and adopted the magistrate judge's report and recommendation.

After being convicted by a jury, Mickens filed this appeal. His principal contention is that the officer's testimony about him having the pistol and throwing it under a car should have been suppressed because at the moment "the officers entered the alley in force" he was seized without probable cause. The government

does not contend that there was probable cause to seize Mickens before he discarded the firearm, but instead argues that he was not seized at that point. The question is whether the simultaneous arrival of a number of police cars in the parking lot where Mickens and others were standing amounted to a seizure for Fourth Amendment purposes.

## II.

A district court's denial of a motion to suppress involves a mixed question of law and fact; we review the factual findings for clear error and the application of the law to the facts de novo. United States v. Franklin, 694 F.3d 1, 7 (11th Cir. 2012). In doing so, we view the evidence in the light most favorable to the party that prevailed below, in this case, the government. See United States v. Perez, 443 F.3d 772, 774 (11th Cir. 2006).

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200, 122 S.Ct. 2105, 2110 (2002). The "crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 2387

(1991) (quotation marks omitted).  See also United States v. Baker, 290 F.3d 1276, 1278 (11th Cir. 2002) (A restraint on liberty only rises to constitutional dimensions where the police "exert a show of authority that communicates to the individual that his liberty is restrained, meaning he is not free to leave.").  In making this determination, courts should consider the following factors:

> [W]hether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.

Perez, 443 F.3d at 778 (quoting United States v. De La Rosa, 922 F.2d 675, 678 (11th Cir. 1991)).

Of the eight Perez factors, the only one that favors Mickens' position that he was seized when he threw the firearm under a car is the number of officers present. One factor, the age, education, and intelligence of the suspect, is unknown.  The remaining six factors, all measured up to the point that Mickens threw the firearm, support the district court's conclusion that he had not been seized before that time.

The first Perez factor and arguably the most important one, is that Mickens' path was not blocked or impeded.  The evidence presented at the suppression hearing and the trial reveals that there are two entrances to the parking lot in which Mickens and others were standing:  an alleyway off of 41st Street and a larger driveway adjoining the Airport Highway.  The police cars approached the parking

6

lot from the alleyway, and when Officer Steppe stopped his car, which was the first or second one in line, it backed up the other police cars preventing them from entering the lot and surrounding those inside it. The police did not block off the other driveway into and out of the parking lot on the Airport Highway side. And as counsel for the government explained at oral argument, the parking lot is bordered to the rear by an open lawn that leads to the Tom Brown Village housing project. The fact that some people did leave the scene when the officers arrived drives home the point that Mickens' path was not blocked or impeded.

All of the other Perez factors also weigh against Mickens' contention that he was seized before he threw the pistol. His identification had not been requested much less retained. He had not been questioned for any period of time, much less for a long time, at that point. Only ten to twenty seconds had passed since the police car had pulled into the parking lot. None of the officers had displayed their weapons, none had touched Mickens, and none had spoken with him up to that point. The totality of the facts and circumstances lead us to conclude, as they led the district court to conclude, that Mickens had not been seized when he threw the firearm under a car. See Drayton, 536 U.S. at 203–04, 122 S.Ct. at 2112 (holding that officers did not seize the defendants when they boarded a passenger bus and began asking questions); United States v. Jordan, 635 F.3d 1181, 1187 (11th Cir. 2011) (holding that the initial encounter between police and a defendant was not a

7

seizure because, among other things, the encounter lasted only one or two minutes, the police did not block or impede the defendant's path, the officers did not ask for identification or brandish their weapons, and the officers did not touch the defendant).[1]

After Mickens discarded the firearm, the officer retrieved it and asked Mickens if he had a permit for it.  Mickens admitted that he did not, thus implicitly admitting that the firearm was his or had been in his possession.  In the district court, Mickens moved to suppress that statement on the ground that he had not been read his Miranda rights before the officer asked him about having a permit. The court denied that motion and the evidence came in at trial.  Because Mickens did not raise that issue in his brief to this Court, it has been abandoned. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."); United States v. Nealy, 232 F.3d 825, 830 (11th Cir. 2000) ("Defendant abandoned the indictment issue by not raising the issue in his initial brief."); Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.").  The issue was brought up at oral argument, but that is too late. See Mesa Air Group,

---

[1] Mickens' argument that the police action "creat[ed] a situation where no one on the scene could leave the area," is refuted by the fact that some people did leave the parking lot when the police arrived.  Jessica Stephens, a friend of Mickens' stepdaughter, testified at trial that she and the stepdaughter "walked off when the police came."

Inc. v. Delta Air Lines, Inc., 573 F.3d 1124, 1130 n.7 (11th Cir. 2009) (holding that an argument not made in a party's brief but raised at oral argument is considered waived); McFarlin v. Conseco Services, LLC, 381 F.3d 1251, 1263 (11th Cir. 2004) ("A party is not allowed to raise at oral argument a new issue for review."); United States v. Cuchet, 197 F.3d 1318, 1321 n.6 (11th Cir. 1999) (declining to address an issue that the appellant did not brief and raised for the first time at oral argument).

**AFFIRMED.**