[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11586
Non-Argument Calendar
_____

D.C. Docket No. 3:13-cr-00099-MCR-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SALATHIAN L. HOUSTON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 5, 2015)

Before WILSON, WILLIAM PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Salathian Houston appeals his conviction for possession of a firearm as a convicted felon. 18 U.S.C. §§ 922(g)(1), 924(a)(2). Houston challenges the denial of his motion to suppress the firearm, which was discovered inside a glove compartment of a vehicle in which he was a passenger. The district court ruled that Houston lacked standing to challenge the search of the vehicle and he was never seized by law enforcement, and the district court ruled alternatively that there was no casual connection between the alleged seizure and discovery of the firearms. We affirm.

On denial of a motion to suppress, we review findings of fact for clear error and the application of law to those facts *de novo*. *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009). We construe all facts in the light most favorable to the government. *Id.*

Houston lacked standing to challenge the search of the vehicle where the firearm was found. Tonyetta Gaston claimed to own the vehicle, a Ford Expedition, and it was registered to Anthony and Gloria Gaston. *See Rakas v. Illinois*, 439 U.S. 128, 134, 99 S. Ct. 421, 425 (1978); *United States v. Lee*, 586 F.3d 859, 864–65 (11th Cir. 2009). Houston was a passenger in the Expedition, but it was not searched following a traffic stop, which Houston could have had standing to challenge. *See Brendlin v. California*, 551 U.S. 249, 255–58, 127 S. Ct. 2400, 2405–07 (2007). As Houston acknowledges in his brief, "it is undisputed

2

[that Deputy Joshua Hendershott approached] the Expedition vehicle [while it] was lawfully parked with the engine running."

Houston's encounter with law enforcement was consensual and did not trigger scrutiny under the Fourth Amendment. Hendershott did not "exert a show of authority that [would have] communicate[d] to [Houston] that his liberty [was] restrained" while he was sitting in the front passenger's seat of the Expedition. *See United States v. Baker*, 290 F.3d 1276, 1278 (11th Cir. 2002). Hendershott and the second officer on the scene, Deputy Jeffrey Gillespie, testified that they did not activate their emergency lights, use their loudspeaker, or unholster their guns as they approached the Expedition and that their patrol vehicles did not obstruct the path for the Expedition to leave the parking lot. And Houston was not seized. *See Florida v. Bostick*, 501 U.S. 429, 436, 111 S. Ct. 2382, 2387 (1991); *Miller v. Harget*, 458 F.3d 1251, 1257–58 (11th Cir. 2006). Hendershott walked past the Expedition to search for its owner and did not stop to speak to Houston. Gillespie asked Houston to leave the vehicle and, within one to two minutes, Houston did so, underwent a pat-down search for weapons, and walked away from Gillespie. Houston remained at the scene with a group of persons standing in front of the Expedition and watched as Gaston refused to consent to a search of the vehicle and asked to leave. Hendershott deployed his drug dog, the dog alerted twice for the presence of drugs, and the two deputies discovered firearms inside the vehicle. The

3

district court reasonably determined that "the police conduct would have communicated to a reasonable person [in Houston's position] that he was . . . at liberty to ignore the police presence and go about his business." *Bostick*, 501 U.S. at 437, 111 S. Ct. at 2387 (internal quotation marks and citation omitted).

Houston argues that he was seized because he could not depart with Gaston in the Expedition, but we disagree. When a person's freedom of movement is restricted because of his reliance on a particular means of transportation, which is a factor independent of police conduct, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 436, 111 S. Ct. at 2387. Houston walked away from Gillespie, was free to "terminate the encounter" with the deputies, *see id.*, and was no longer a subject of scrutiny when Gaston refused to consent to a search of the vehicle and asked to leave. *See Brendlin*, 551 U.S. at 257, 127 S. Ct. at 2407 (acknowledging that a passenger reasonably would feel that an "attempt to leave the scene [of a traffic stop] would be . . . likely to prompt an objection from the officer that no passenger would feel free to leave in the first place"). Houston did not have any further interaction with the deputies until they discovered the firearms and, even after being questioned by the deputies, Houston was allowed to leave. Houston's inability to leave in the Expedition "[did] not elevate [his] interaction [with the deputies] to that of a seizure." *Baker*, 290 F.3d at 1279.

4

We **AFFIRM** Houston's conviction.