[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12169
Non-Argument Calendar
_____

D.C. Docket No. 7:17-cr-00521-LSC-HNJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH LAYMOND COLVIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 28, 2020)

Before JORDAN, JILL PRYOR and NEWSOM, Circuit Judges.

PER CURIAM:

Joseph Colvin appeals the district court's denial of his motion to suppress evidence stemming from an encounter with law enforcement officers. Colvin argues that the officers violated his Fourth Amendment rights because the encounter qualified as a seizure and occurred in the absence of reasonable suspicion or probable cause. After careful review, we affirm the district court's ruling because Colvin's initial encounter with the police did not qualify as a seizure.

## I.    BACKGROUND

The following facts were established at Colvin's motion to suppress hearing. Jonathan Paul Toxey and James Wallace were law enforcement officers with the Tuscaloosa Police Department's crime suppression unit. On March 2, 2017, they were on patrol in a marked car when they observed a parked Toyota with its lights on and two occupants inside. It was late at night and the officers were patrolling in a high crime area. After observing the parked Toyota, the officers left the area to assist other officers in an unrelated matter.

Around 10 to 15 minutes later, the officers passed the Toyota again. At that time, the lights in the vehicle were off, but there were still two occupants inside. The two occupants were later identified as Fernandez Britton, who was in the driver's seat, and Colvin, who was in the passenger seat.

The officers observed Colvin's arm quickly shove something in an overhead storage area. Based on that movement, Toxey backed up his patrol car and parked behind the Toyota. Toxey and Wallace got out and approached the vehicle—Toxey approached on the driver's side and Wallace on the passenger side—and Toxey asked Britton to roll down his window.

Britton rolled down his window and leaned back, handing Toxey his driver's license and insurance information through the rear window on the driver's side. During the exchange, Toxey noticed a green, leafy substance in Britton's lap, which he believed to be marijuana. After spotting the marijuana, Toxey and Wallace ordered both passengers out of the car. When the car doors were opened, Wallace noticed an open alcoholic beverage container on the passenger side of the car, a violation of Alabama's open container law. Colvin advised Wallace that he had a prosthetic leg and asked Wallace to get it for him. After helping Colvin attach his prosthetic leg, Wallace had Colvin exit the vehicle. Wallace asked Colvin to sit on the curb next to the house the car was parked in front of.

While Toxey was speaking with Britton, Colvin, who had become angry and begun yelling at the officers, dove back into the passenger side of the vehicle. Wallace followed and got him out of the car, and the two struggled over a semi-automatic firearm in Colvin's hands. During the struggle, Colvin said, "it's going

3

to go off, it's a loaded gun." Doc. 49 at 11.[1]  The firearm was seized and placed into evidence.  After he was taken into custody, Colvin made a comment to the officers indicating that he planned to use the firearm on the officers.

Colvin was indicted by a grand jury of one count of being a convicted felon in possession of a firearm, a Ruger .380 caliber pistol, in violation of 18 U.S.C. § 922(g)(1).  Colvin filed a motion to suppress asserting that he was seized without reasonable suspicion or probable cause in violation of the Fourth Amendment and so all evidence obtained from his encounter with the officers should be suppressed. Following a hearing, the district court issued an order denying Colvin's motion to suppress.  The court found that the initial encounter between Colvin and the officers, before the officers observed the leafy green marijuana-like substance, was "clearly a consensual police-citizen exchange," and thus did not implicate Fourth Amendment scrutiny.  Doc. 29 at 5.  The court was unpersuaded by Colvin's contention that he was in a car and not on the street, concluding that it did not matter because Colvin was nonetheless in public view.  The court also concluded that the observation of the leafy green substance in Britton's lap, as well as the open alcoholic beverage container, created a reasonable suspicion, if not probable cause, to believe that Colvin was involved in criminal activity.

---

[1] Citations in the form "Doc. #" refer to district court docket entries.

Following the denial of his motion to suppress, Colvin conditionally pled guilty to the charge in his indictment, reserving the right to appeal the denial of his motion to suppress.  The district court sentenced Colvin to 240 months' imprisonment followed by 5 years of supervised release.  Colvin now appeals the denial of his motion to suppress.

## II.    STANDARD OF REVIEW

With respect to a motion to suppress, we review the district court's findings of fact for clear error and its application of the law to those facts *de novo*, construing the facts in the light most favorable to the prevailing party below—here, the government.  *United States v. Lewis*, 674 F.3d 1298, 1302–03 (11th Cir. 2012).

## III.    DISCUSSION

On appeal, Colvin argues that the initial encounter between him and the police qualified as a seizure under the Fourth Amendment.  Because there was no probable cause or reasonable suspicion to support the initial seizure, Colvin argues, the evidence seized based on this encounter—the firearm—should be suppressed.  We hold that because the encounter did not qualify as a seizure, there was no violation of Colvin's constitutional rights.[2]

---

[2] Colvin argues for the first time in his reply brief that the officers also violated the Fourth Amendment by ordering Britton and Colvin out of the vehicle.  Colvin asserts that although the smell of marijuana often supports a finding of reasonable suspicion, the sight of plant material is insufficient to support a finding of reasonable suspicion or probable cause.  By

The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV. "Evidence obtained in violation of the Fourth Amendment must be suppressed." *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011).  Not all interactions between law enforcement and citizens qualify as a "seizure[] of persons" triggering Fourth Amendment protections.  *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).  We have identified "three broad categories of police-citizen encounters for purposes of . . . Fourth Amendment analysis:  (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests."  *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006).

The first category, referred to as consensual encounters, does not implicate Fourth Amendment scrutiny.  *Id.*  Law enforcement officers do not convert a consensual encounter into a Fourth Amendment seizure merely by approaching an individual in a public place, identifying themselves as law enforcement officers, and asking the individual a few questions or requesting identification.  *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion); *United States v. Espinosa-Guerra*, 805 F.2d 1502, 1507 (11th Cir. 1986).  To evaluate whether an encounter is consensual, we must consider "whether, taking into account all of the circumstances

raising this argument for the first time in a reply brief, Colvin has abandoned the argument. *See United States v. Moran*, 778 F.3d 942, 985 (11th Cir. 2015).

6

surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (internal citation omitted).

To determine whether a reasonable person would feel free to terminate an encounter with law enforcement, courts consider several factors including: "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police." *Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006) (quoting *Perez*, 443 F.3d at 778).

Colvin asserts that the nature of the stop, that it occurred at night and involved the officers parking behind the Toyota before approaching from the rear, was coercive and so Colvin and his passenger did not feel that they were free to leave.

Examining the above factors under the facts most favorable to the government, we cannot conclude that the initial encounter was coercive. The officers parked behind the Toyota and approached the car, which was parked in a public place. Toxey then asked Britton for identification. Such an interaction,

7

without more, is insufficient to convert an encounter into a seizure under the Fourth Amendment. *See Royer*, 460 U.S. at 497. The fact that the officers parked their car behind the Toyota and approached on either side from the rear does not lead us to a contrary conclusion. A police officer does not seize an individual merely by approaching the person in a parked car. *See Miller*, 458 F.3d at 1257–58 (encounter where police officer pulled up behind the individual's car, and flashed his lights before approaching was not a seizure); *United States v. Baker*, 290 F.3d 1276, 1279 (11th Cir. 2002) (encounter where an officer approached a vehicle that was stopped in traffic and displayed his badge was not a seizure). Neither officer displayed a weapon in the encounter, touched Britton or Colvin, or gave any indication that they were not free to leave. Although there were two officers present, there were also two suspects in the car. We thus conclude that Colvin's initial encounter with law enforcement was consensual and did not implicate the Fourth Amendment. Accordingly, we affirm the district court's denial of Colvin's motion to dismiss.

    **AFFIRMED.**

8